UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RAMON J. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:15-CV-234-REW |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DENNIS JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Dennis Johnson moved for qualified immunity-based summary judgment on all claims in Plaintiff Ramon Martin's Complaint.[1] DE #11 (Motion). Martin responded. DE #17 (Response). Johnson replied. DE #18 (Reply). The motion is ripe for consideration. For the following reasons, the Court **DENIES** DE #11. Material questions of fact remain concerning Officer Johnson's temporally-relevant knowledge of Martin's insurance status, precluding, under the standard, a qualified immunity finding.

I. BACKGROUND[2]

On March 16, 2015, Plaintiff Martin was involved in a motor vehicle accident in Winchester. Defendant Johnson, a Kentucky State Police officer, arrived on scene and asked Martin for proof of current automobile insurance. Martin did not have such proof on his person at the time. Martin alleges that he contemporaneously gave Johnson the

---

[1] Only Johnson in his individual capacity remains a defendant in the case. *See* DE #19 (Minute Entry Order), at 2.

[2] Under the summary judgment standard, the Court assesses the facts in favor of Martin, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (citation and internal quotation marks omitted).

1

name and number of his Nationwide insurance agent—Jeremy Dwayne McClendon. Martin alleges that Johnson called McClendon on the scene, in Martin's presence. McClendon allegedly transferred the call to Reggie Rucker, another Nationwide employee, who verified to Johnson current Martin automobile insurance. All agree that Johnson permitted Martin to leave the scene without citation or arrest.

Following these events, Johnson initiated legal proceedings against Martin by filing a citation and signing a criminal complaint against Martin, leading to Clark District Court arrest warrant issuance. Martin alleges the complaint was "dated" March 16, 2015 (the accident date), and "filed" on March 24, 2015.[3] In support of the complaint, Johnson swore that Nationwide advised that Martin did not have insurance coverage. DE #1, at ¶ 16; DE #3, at ¶ 8.

Martin alleges that law enforcement (not Officer Johnson) arrested him on the complaint warrant on March 20, 2015. McClendon allegedly faxed a statement on March 21 or 23, 2015, expressing Martin's specific Nationwide insurance coverage. Following initial proceedings, the Clark District Court dismissed criminal charges against Martin on April 4, 2015. Martin filed this Complaint raising claims under 42 U.S.C. § 1983[4] on August 12, 2015.

---

[3] Frustratingly, none of the state court paperwork—including the citation, complaint, or warrant—is in the record. Both sides seem to agree that the complaint involved an allegation of failure to maintain insurance, not a failure to provide proof of insurance (although the defense is not fully consistent about that). The Court is all for efficiency, but the record is so bereft of proof as to seriously hamper any effort at full analysis.

[4] Section 1983 provides a federal cause of action against state officials for the deprivation of federal constitutional rights under color of state law. The Fifth and Fourteenth Amendments protect persons from deprivation of liberty "without due process of law." The Fourth Amendment generally, as relevant here, protects against arrest without probable cause. Martin particularly asserts the following § 1983 claims (using his phrasing): false arrest, unreasonable search and seizure, malicious prosecution, detention

2

## II. STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

and confinement, malicious abuse of process, and refusing or neglecting to prevent. [The final claim appears to apply primarily to former Defendant Kentucky State Police.] The parties here present no distinct analysis of Martin's separate claims or their possibly distinct elements.

3

and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

**III.    ANALYSIS**

In the summary judgment motion, Johnson's sole argument (relevant in the narrowed case scope) is that he is entitled to qualified immunity. DE #11, at 8-13. Factually, Johnson agrees that he responded to Martin's accident, that Martin did not have proof of insurance on his person at the scene, and that Martin freely left the scene. Johnson agrees that he subsequently sought and obtained a criminal complaint against Martin, that a warrant issued, and that Martin was subsequently arrested. Johnson agrees that the charges against Martin were ultimately dismissed.

However, as the parties acknowledge, there is a critical issue of disputed fact—whether Johnson called Nationwide at the scene of the accident and confirmed current

4

Martin insurance coverage through McClendon and /or Rucker.[5] The proof, at this stage of the case, is limited to the verified complaint (sworn to by Martin, *see* DE #1, at 9), and the defense's denials in the Answer and unsworn / unattributed statements in the motion for summary judgment. Johnson presents no evidence in support of his motion.

Johnson argues that at the scene of the accident, he "could have issued the Plaintiff a citation for violation of Kentucky law requiring the owner of every motor vehicle in Kentucky have proof of liability insurance. Or [he] could have arrested the Plaintiff for the misdemeanor offense of failure to maintain automobile liability insurance." *Id.* at 9. Thus, per Johnson, there are two statutes potentially at issue: Kentucky's general car insurance maintenance requirement (KRS 304.39-090 / KRS 304.99-060), and the statute governing insurance proof presentation (KRS 304.39-117).

First, "[a]n owner of a motor vehicle registered in this Commonwealth who ceases to maintain security as required by the provisions on security may not operate or permit operation of the vehicle in this Commonwealth until security has again been provided[.]" KRS 304.39-090; *see also* KRS 186A.065. This section imposes the general Kentucky requirement that owners of vehicles maintain liability insurance but does not speak to (or impose) a proof-carrying requirement. KRS 304.99-060 imposes certain penalties for vehicle owners and operators without insurance. In a failure-to-maintain-insurance prosecution, "[w]hat the Commonwealth must prove is clear: that there is no insurance in effect at the time of the alleged crime." *Kilburn v. Commonwealth*, No. 2012-SC-000494-MR, 2014 WL 1514622, at *5 (Ky. Apr. 17, 2014).

Second, in Kentucky,

---

[5] The March 21 and / or 23, 2015 fax(es), *see* DE #1, at 3, 4, may also ultimately be relevant to case merits. Again, those are not in this skeletal record.

5

> If an owner enters into an insurance contract on a newly acquired motor vehicle, or changes insurance carriers on an existing motor vehicle, the owner shall keep the paper insurance card or a portable electronic device to download the insurance card in his or her motor vehicle for forty-five (45) days from the date the coverage took effect as prima facie evidence that the required security is currently in full force and effect, and shall show the card to a peace officer upon request.

KRS 304.39-117(2) (effective July 15, 2014). Further, "the paper or electronic insurance card . . . shall be evidence to a peace officer who requests the card[.]" KRS 304.39-117(3).

Courts have referred to KRS 304.39-117 as the "failure to produce insurance card" statute. *United States v. Stapleton*, Nos. 12-11-ART-(1), 12-11-ART-(2), 12-11-ART-(3), 2013 WL 3935104, at 12 n.8 (E.D. Ky. July 30, 2013); *Rader v. Commonwealth*, No. 2012-CA-002053-DG, 2014 WL 5314699, at *1 (Ky. Ct. App. Oct. 17, 2014); *Pratt v. Commonwealth*, Nos. 2003-CA-001916-MR, 2003-CA-001972-MR, 2004 WL 2260467, at *1 (Ky. Ct. App. Oct. 8, 2004). The Kentucky Supreme Court has stated, applying the pre-July 2014 statute: "Owners must also maintain proof of insurance in their vehicles and provide proof of that insurance upon request of a peace officer." *Kilburn*, 2014 WL 1514622, at *5. The July 2014 amendment significantly altered the statute's requirements, as compared with the quoted language in *Kilburn*. *See* 2014 WL 1514622, at *5 n.2. The incident at issue in this case happened in March 2015, so the amended statute applies.

The Court interprets the present version of KRS 304.39-117(2) to not impose a general requirement of maintaining physical (or equivalent electronic) insurance proof in a motor vehicle at all times. Rather, subsection (2) imposes a requirement of producing a physical insurance card or equivalent electronic proof only within a 45-day window of

6

the owner obtaining insurance on a new vehicle or changing insurance carriers on an existing vehicle.[6] The parties do not particularly address whether Martin had an obligation, in fact, under KRS 304.39-117. Interestingly, there is no criminal penalty associated with KRS 304.39-117. The Kentucky Supreme Court has stated that 304.39-117 "does not prescribe a criminal penalty, but rather describes conduct that motor-vehicle owners must follow." *Kilburn*, 2014 WL 1514622, at *5.

*Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982); *see, e.g.*, *Ortiz ex rel. Ortiz v. Kazimer*, ___ F.3d ___, No. 15-3453, 2016 WL 423741, at *1 (6th Cir. Feb. 4, 2016) (affirming denial of qualified immunity to officers based on conflicting testimony); *Robertson v. Lucas*, 753 F.3d 606, 610 (6th Cir. 2014) (affirming grant of qualified immunity to state and federal law enforcement officers); *Barnes v. Wright*, 449 F.3d 709, 711 (6th Cir. 2006) (reversing the denial of qualified immunity to law enforcement officers in a § 1983 suit).

"Since the defendant officer[] ha[s] raised the qualified immunity defense, plaintiff bears the burden of showing that [he is] not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). In the summary judgment

---

[6] The legislative history confirms this reading. The 2014 bill amending the statute was titled, "An Act relating to motor vehicle insurance . . . regarding proof of insurance for motor vehicles, to require that a copy of the insurance card be required only within 45 days of transfer of title or changing insurance carriers[.]" The 2014 amendment specifically added the critical introductory "if" clause and 45-day language. Presumably, the 45-day window aims at the lag time in the AVIS system for insurance status changes.

7

context, the Court "view[s] all evidence, and draw[s] all reasonable inferences, in the light most favorable to the nonmoving party," Martin. *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (internal alteration removed).

To evaluate the qualified immunity question, courts engage in a two-part inquiry: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official]'s conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that courts may address the two questions in either order). The right must be "so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Johnson*, 790 F.3d at 653. The Court must avoid "a high level of generality" in assessing the clarity of the right or misconduct. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks omitted) (citing *Brosseau v. Haugen*, 125 S. Ct. 596 (2004))).

The answer to the first question is yes. The facts alleged, viewed in the light most favorable to Martin, would show a constitutional right violation. Martin alleges—and the Court accepts it as true at this point in the case—that Johnson called the agency at the scene of the accident, spoke with McClendon and / or Rucker, and confirmed that Martin had current insurance coverage. If Johnson did do this, he would not have had probable cause to later sign a criminal complaint and seek an arrest warrant against Martin for lack

8

of insurance.[7] Martin had, at a minimum, a "Fourth Amendment right to be arrested only upon probable cause." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). Further, he had a right to have a criminal proceeding initiated against him only upon then-existing probable cause. *Sykes v. Anderson*, 625 F.3d 294, 310-11 (6th Cir. 2010). Thus, in Martin's version of events, Johnson violated his rights when he swore to a complaint and sought warrant issuance without probable cause. To be sure, Johnson disputes this account, but the Court must view the facts in the light most favorable to Martin at this stage of the case. *Ortiz*, 2016 WL 423741, at *5. Although the Court surely has significant questions over the details of what transpired, Martin's basic claim is that Johnson spoke to an insurance agent and confirmed that Martin had insurance in effect. Johnson then, despite and contrary to that knowledge, swore out a complaint premised on Martin not having insurance in effect.[8] If Johnson knowingly pursued a false charge, one he was aware at the time did not rest on probable cause, he violated Martin's rights.

The answer to the second question is also yes. It is clearly established that a law enforcement officer may not seek a criminal complaint that probable cause does not support. *Ireland v. Tunis*, 113 F.3d 1435, 1448-49 (6th Cir. 1997).[9] An objective reasonableness "test is appropriate for determining whether in the instant action

---

[7] Perhaps the particular requirements of KRS 304.39-117 apply to Martin here (as Johnson seems to argue), but the current, spare record does not permit full determination of this question. It is unclear if this statute will be at issue in the case.

[8] There is much mystery here. Certainly, the dismissal indicates Martin did have insurance. Further, Johnson did let Martin leave without so much as a citation. Still, it is perplexing to think Johnson would later act in direct contravention to the facts he possessed. The record, with no proof or further detail beyond the pleadings themselves, just does not allow a more nuanced assessment.

[9] Further, "[i]t is clearly established that an arrest without probable cause violates the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003); *see generally, e.g.*, *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532 (W.D. Ky. 2005).

[Johnson] is immune from suit, for it was [Johnson]'s complaint that caused [Martin]'s allegedly unconstitutional warrant to issue. In such a case, [Johnson] will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 1448 (citing *Malley v. Briggs*, 106 S. Ct. 1092 (1986)); *see also Malley*, 106 S. Ct. at 1098 (The "standard of objective reasonableness . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost." (footnote omitted)); *id.* (asking "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant" and "requir[ing] the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment"). The "proper inquiry . . . is whether a reasonably competent investigator armed with [Johnson]'s knowledge could have acted as [Johnson] did." *Ireland*, 113 F.3d at 1449.

Additionally, "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court. . . . Such reliance is unreasonable, and detention of an individual pursuant to such deceptive practices violates the Fourth Amendment. . . . This Court has held investigators subject to suit under § 1983 for making materially false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Gregory v. City of Louisville*, 444 F.3d 725,

10

758 (6th Cir. 2006). "[T]he law [i]s clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 310 (6th Cir. 2005).[10] Finally, it is clearly established that probable cause must exist "to initiate the criminal proceeding against" Martin. *Sykes*, 625 F.3d at 311.

In Martin's version of events—which the Court accepts at this stage—Johnson knew at the time he swore to the complaint that Martin actually had current insurance. In these circumstances, it is obvious that a reasonable officer would have determined that there was not probable cause to believe that Martin violated Kentucky's car insurance requirement statute. If Johnson verified on scene that Martin had current insurance, it would be objectively unreasonable to later swear that Martin did not. In this version, which the Court must credit procedurally, Johnson misrepresented a fact that was crucial to the probable cause determination. *See Gregory*, 444 F.3d at 758.

Because in Martin's version of the facts, Johnson did not (and an objectively reasonable officer in Johnson's position would not) have probable cause to sign a criminal complaint or seek an arrest warrant, the Court denies the motion for summary judgment and the request to find qualified immunity. Again, Johnson disputes Martin's story, but Martin's record-supported, verified description is what matters on summary judgment. *Ortiz*, 2016 WL 423741, at *2 (analyzing "the plaintiffs' record-supported

---

[10] "[P]robable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*." *Radvansky*, 395 F.3d at 310 (citing *Carroll v. United States*, 45 S. Ct. 280, 288 (1925)) (emphasis in original).

11

version of the facts"). Based on the facts viewed from Martin's perspective, Johnson is not entitled to insulation from suit.[11]

IV.     CONCLUSION

For the reasons stated, the Court **DENIES** DE #11. Johnson is not entitled to qualified immunity. The case proceeds on DE #14's schedule.

This the 16th day of February, 2016.



Signed By:
Robert E. Wier
United States Magistrate Judge

---

[11] Johnson argues, DE #18, at 3, that he could have arrested Martin on the scene the moment Martin failed to establish proof of insurance. As such, he contends, "The fact that proof of insurance was shown later does not do away with the qualified immunity shield." *Id.* The Court disagrees, on these facts. An officer could have probable cause at one point that later, after further assessment or investigation, dissipates. Thus, if Johnson had probable cause at moment A (when he first perceived that Johnson had no proof on insurance on his person) but then called and verified insurance at moment B (when he allegedly called Nationwide on the scene), Johnson cannot ask the Court to judge his post-moment-B warrant-seeking conduct only by the moment A knowledge. The gathered cause at the time of the charge initiation (which would, per Martin, include both moment A and moment B) is what matters in this scenario.